IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

PEDRO BELTRAN,                     )    CASE NO. 5:15 CV 644
                                   )
                    Plaintiff,     )
                                   )    MAGISTRATE JUDGE
        v.                         )    WILLIAM H. BAUGHMAN, JR.
                                   )
COMMISSIONER OF SOCIAL             )
SECURITY,                          )
                                   )    **MEMORANDUM OPINION AND**
                    Defendant.     )    **ORDER**


## Introduction

This is an action by Pedro L. Beltran  under 42 U.S.C. § 405(g) for judicial review of

the final decision of the Commissioner of Social Security denying his application for

disability insurance benefits ("DIB").[1] The parties have consented to my jurisdiction.[2] The

Commissioner has answered[3] and filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 14.

[3] ECF # 10.

[4] ECF # 11.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be affirmed as supported by substantial evidence.

## Facts

**A.      Background facts and decision of the Administrative Law Judge ("ALJ"**

Beltran, 46 years old at the time of the administrative hearing,[11] is a high school graduate.[12]   His past work experience includes employment as a landscaper, call center operator, and warehouse supervisor.[13]

The Administrative Law Judge ("ALJ") then found that Beltran had the following severe impairments: degenerative disc disease of the lumbar spine and chronic back pain

---

[5] ECF # 5.

[6] ECF # 13.

[7] ECF # 18 (Beltran's brief), ECF # 23 (Commissioner's brief).

[8] ECF # 18-1 (Beltran's charts), ECF # 23-1 (Commissioner's charts).

[9] ECF # 17 (Beltran's fact sheet).

[10] ECF # 25.

[11] ECF # 17, at 1.

[12] *Id.*

[13] *Id.*

[hereinafter, collectively, lumbar impairment]; cervicalgia and myofascial pain syndrome [hereinafter, collectively, cervical impairment] (20 CFR 404.1520(c)). The ALJ decided that the relevant impairments did not meet or equal a listing.[14] The ALJ then made the following finding regarding Beltran's residual functional capacity:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined by 20 CFR 404.1567(a) except that the claimant may occasionally crouch and crawl, may frequently climb ramps or stairs, but may never climb ladders, ropes or scaffolds; the claimant must avoid concentrated exposure to vibration and extreme cold, and must avoid all exposure to workplace hazards, including unprotected heights, dangerous moving machinery, and commercial driving; due to side effects of his medications, the claimant is limited to the performance of unskilled work, consisting of routine tasks, undertaken in a static work setting, with infrequent changes, no fast pace, and no strict time or production quotas.[15]

Given that residual functional capacity, the ALJ found Beltran incapable of performing his past relevant work as landscaper, call center operator, and warehouse supervisor.

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Beltran could perform.[16] The ALJ, therefore, found Beltran not under a disability.[17]

---

[14] ECF # 11, Transcript ("Tr.") at 35.

[15] *Id.* at 36.

[16] *Id* at 41.

[17] *Id.* at 42.

**B.      Issues on judicial review**

Beltran asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Beltran presents the following issues for judicial review:[18]

- •      Whether the ALJ failed to give appropriate weight to the opinion of treating physician, Dr. Goswami.

- •      Whether the ALJ's assessment of Mr. Beltran's pain and credibility are supported by substantial evidence.

## Analysis

**A.                  Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different

---

[18] ECF # 18 at 1.

conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *The treating source and good reasons rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[22] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

---

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[29] *Id.* at 535.

-6-

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on

---

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

[34] *Id.*

[35] *Id.*

the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40] *Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[43] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[36] *Id.*

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[39] *Id.* at 375-76.

[40] *Rogers,* 486 F.3d at 242.

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[43] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[44] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[45] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[46]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[47] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[48] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[44] *Id.*

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

and the treatment reports.[50] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Rogers*, 486 F.3d 234 at 242.

[54] *Blakley*, 581 F.3d at 406-07.

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[59]

- the rejection or discounting of the weight of a treating source without assigning weight,[60]

---

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[59] *Blakley*, 581 F.3d at 407-08.

[60] *Id.* at 408.

-11-

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[61]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[62]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[63] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[64]

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[67]

---

[61] *Id.*

[62] *Id.* at 409.

[63] *Hensley*, 573 F.3d at 266-67.

[64] *Friend*, 375 F. App'x at 551-52.

[65] *Blakley*, 581 F.3d 399.

[66] *Id.* at 409-10.

[67] *Id.* at 410.

-12-

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

### 3.    Credibility

As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[70] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms or limitations will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[71]

The regulations also make the same point.

---

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[69] *Id.* at 940.

[70] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

[71] *Id.* at 34484.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[72]

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[73]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[74] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side

---

[72] 20 C.F.R. § 416.929(c)(2).

[73] *Swain*, 297 F. Supp. 2d at 988-89.

[74] 20 C.F.R. § 404.1529(c)(3).

effects of medication; and treatment or measures, other than medication, taken to relieve pain.[75]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[76] A court may not disturb the ALJ's credibility determination absent compelling reason.[77]

## B. Application of standards

This matter presents related questions concerning the treatment of treating source opinions and the assessment of the claimant's credibility. The meeting point of these issues is the RFC, which Beltran believes would be more restrictive if the treating source opinion was properly weighed, and if his own testimony as to limitations was viewed more favorably. These arguments will be addressed sequentially.

---

[75] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[76] *Buxton*, 246 F.3d at 773.

[77] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

-15-

### 1. *Treating source opinions*

The ALJ in this matter assigned "little weight" to three functional opinions of Dr. Atul Goswami, M.D., who was Beltran's treating physician.[78] As summarized by the ALJ, Dr. Goswami's opinion of August 6, 2012 concluded that Beltran "could never stoop, lift, [or] grasp,"and that "he could walk fifteen minutes, stand fifteen minutes, walk 20 minutes, then sit 10 minutes, then walk 20 minutes."[79]  The ALJ then noted that on March 12, 2013 and July 9, 2013, Dr. Goswami opined that Beltran "could lift fifteen pounds occasionally, and ten pounds frequently, could sit four hours and stand/walk 20 hours, with occasional postural limitations, rare balancing and multiple other limitations."[80]

The ALJ then determined that "[t]hese later opinions suggest that the claimant's condition improved, rendering the opinions internally inconsistent, and read in comparison to the physical examinations cited [which showed "no abnormal findings"]; suggest limitations approaching [*sic*] that are completely unmerited."[81]  The ALJ concluded that "[m]any of the limitations such as those prohibiting fine manipulation are inconsistent with any subjective complaint or clinical finding in the record ... [and so] [s]uch extreme

---

[78] Tr. at 40.

[79] *Id*. (citing record).

[80] *Id*. (citing record).

[81] *Id*.

-16-

unsupported limitations raise serious doubts as to the validity of these reports.  Thus, they are entitled to little weight."[82]

As a preliminary observation, the ALJ here makes no effort to analyze the treating source opinion pursuant to the distinct two-step analysis set out in the regulations and re-stated in *Gayheart*. And once again, the Commissioner tacitly concedes that the rubric in *Gayheart* was not followed, but argues, on the basis of a pre-*Gayheart* unreported decision,[83] that the only requirement imposed by the regulations is simply that "good reasons be given for the weight given to the opinion of a treating source.[84]

That said, Beltran argues that the ALJ's finding that Dr. Goswami's opinion was entitled to little weight is flawed for two reasons:

(1) the claim that Dr. Goswami's physical examination findings show no abnormalities is not correct;[85] and

(2) the claim that Dr. Goswami's opinions are internally inconsistent is also incorrect.[86]

As to Dr. Goswami's physical examination findings, the Commissioner maintains that the treatment notes for 19 of the 20 times that Beltran was seen by Dr. Goswami show that

---

[82] *Id.*

[83] *Tilley v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 216, 222 (6th Cir. 2010).

[84] ECF # 23 at 9.

[85] ECF # 18 at 12.

[86] *Id.* at 13-15.

there were no abnormal findings, citing only the visit of February 2013 as indicting some abnormal findings.[87]  While Beltran also cites to the treatment notes of February 2013, he further claims that the notes of an examination of October 2013 show abnormal findings.[88]

But even if both of those visits produced notes with some findings that arguably support a more restrictive functional opinion, the examination of October 2013 occurred after Dr. Goswami produced the latest of his three functional opinions on July 9, 2013, and so could not have been relied upon by Dr. Goswami in producing any of his opinions.[89]  Further, to the extent that Beltran also argues that Dr. Goswami's opinions are supported by purportedly "abnormal" findings made in March 2013 by Dr. J. Tim Sable, M.D., a pain specialist who treated Beltran on referral from Dr. Goswami,[90] the Commissioner observes that these March 2013 notes post-date two of Dr. Goswami's three opinions, and thus cannot be viewed as support for them.[91]

Therefore, although there may have been some slight imprecision in the ALJ's characterization that Dr. Goswami's treatment notes found "no" abnormalities that would

---

[87] ECF # 23 at 9-10.

[88] ECF # 18 at 12.

[89] Moreover, as the Commissioner observes, the October 2013 examination notes were not before the ALJ at the November 2013 hearing and so have no bearing on the ALJ's decision. ECF# 23 at 10.

[90] *See*, ECF # 18 at 12-13.

[91] ECF # 23 at 11.

support his functional opinions,[92] the single example of a portion of Dr. Goswami's treatment notes of February 2013 does not change the ALJ's reasoning that Dr. Goswami's functional opinions, taken together or individually, were not substantially supported by the relevant treatment notes.

Similarly, Beltran's contention that the ALJ erred in finding internal inconsistencies among Dr. Goswami's three functional opinions is also not supported by the record. As the Commissioner states, the report of August 2012 opined that Beltran "cannot" lift, push, pull or grasp, while in 2013 Dr. Goswami stated that lift or carry 15 pounds occasionally and 10 pounds frequently, and that Beltran could do fine manipulations occasionally.[93] Although Beltran now contends that this apparent discrepancy was the product of a different opinion form and not an inconsistency,[94] the Commissioner notes that the 2013 opinion was actually found by the ALJ to be consistent with other physical examinations that showed normal grip strength, along with normal sensation, symmetric reflexes, normal gait, and adequate range of motion.[95]

Thus, for the reasons stated, the reasons given by the ALJ in support of the decision to assign lesser weight to the functional opinions of Dr. Goswami are stated with sufficient

---

[92] In another place the ALJ found, with perhaps greater precision, that Beltran's physical examinations "have consistently, albeit not universally, reported either minimal or normal findings ...." Tr. at 37 (citing record).

[93] ECF # 23 at 11.

[94] ECF # 18 at 13-15.

[95] ECF # 23 at 12 (citing tr. at 37-38).

particularity to permit meaningful judicial review. Further, and as also stated above, following such review, the ALJ's reasons have the support of substantial evidence.

## 2. *Credibility*

Here Beltran essentially argues that the ALJ overstated or unreasonably emphasized factors such as Beltran's receipt of unemployment benefits,[96] his use of a cane,[97] and his ability to perform personal care activities[98] in deciding to downgrade Beltran's credibility. He also maintains that in so doing the ALJ then minimized or slighted the objective findings of the pain management specialist or the ways Beltran pursued treatment for his pain.[99]

But, it must be noted that a claimant's statements made in the application for unemployment benefits may be properly seen as inconsistent with a claim of disabling impairments,[100] and it is further not improper to consider the claimant's ability to engage in the activities of daily living when evaluating a claim of inability to work.[101] Moreover, even if, as the Commissioner concedes, the ALJ overstated the observation that Beltran's "need" for a cane was inconsistent with records showing his ability to walk without assistance, such

---

[96] ECF # 18 at 16-17.

[97] *Id.* at 17-18.

[98] *Id*. at 16.

[99] *Id*. at 18.

[100] *Workman v. Comm'r of Social Security,* 105 Fed. App'x 794, 801 (6th Cir. 2004).

[101] *Warner v. Comm'r of Social Security,* 375 F.3d 387 (6th Cir. 2004).

an observation was harmless error given the existence of the other stated, supportable reasons for downgrading Beltran's credibility.[102]

While, on *de novo* review, I may not have reached the same conclusions from this evidence as did the ALJ, the law provides that the ALJ's findings as to the credibility of the claimant is entitled to great weight and deference from the reviewing court.[103]  The court, in such cases, is limited to evaluating whether the reasons given are reasonable and supported by substantial evidence.[104]

Here, despite the existence of some overstatements by the ALJ of the reasons given, involve proper consideration of factors relevant to the credibility of a claimant, and substantial evidence supports the finding that Beltran was only partially credible in his claims of disability.

### Conclusion

For the reasons stated, I find that the decision of the ALJ in this case is supported by substantial evidence, and so that decision is hereby affirmed.

IT IS SO ORDERED.

Dated: June 17, 2016                                     s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge

---

[102] *See, Rabbers v. Comm'r of Social Security,* 582 F.3d 647, 654 (6th Cir. 2009).

[103] *Walters v. Comm'r of Social Security,* 127 F.3d 525, 531 (6th Cir. 1997).

[104] *Jones v. Comm'r of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

-21-